1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10

11   ERICA MORGERA,                        No. 2:09-cv-01476-MCE-GGH

12        Plaintiff,

13        v.                               <u>MEMORANDUM AND ORDER</u>

14   COUNTRYWIDE HOME LOANS, INC.;
     PACIFIC FIRST FINANCIAL
15   SERVICES, L.P.; RECONTRUST
     COMPANY, N.A.; MORTGAGE
16   ELECTRONIC REGISTRATION
     SYSTEMS, INC.; HILLTOP
17   FINANCIAL MORTGAGE; THANH NGOC
     NGUYEN; SUNMEET NARINDER
18   ANAND; IBRAHIM K. KABA; DANIEL
     KLEMESRUD and DOES 1 through
19   20 inclusive,

20        Defendants.

21                       ----oo0oo----

22

23        Plaintiff Erica Morgera ("Plaintiff") seeks monetary relief

24   from Defendants for claims arising under the federal Truth in

25   Lending Act ("TILA"), California Rosenthal Fair Debt Collection

26   Practices Act ("RFDCPA"), the federal Real Estate Settlement

27   Procedures Act ("RESPA"), and California's Unfair Competition Law

28   ("UCL").

                                    1

1  Plaintiff also alleges state law claims of negligence, breach of
2  fiduciary duty, fraud, breach of contract, breach of the implied
3  covenant of good faith and fair dealing, and wrongful
4  foreclosure.

5      Presently before the Court is a Motion by Defendants
6  Countrywide Home Loans, Inc. ("Countrywide"), ReconTrust Company,
7  N.A. ("ReconTrust"), and Mortgage Electronic Registration
8  Systems, Inc. ("MERS") (collectively "Defendants") to Dismiss
9  Plaintiff's Second, Third, Fourth, Sixth, Seventh, and Tenth
10 Claims for failure to state a claim upon which relief may be
11 granted pursuant to Federal Rule of Civil Procedure 12(b)(6)[1]  In
12 addition, Defendants move to strike Plaintiff's request for
13 punitive damages pursuant to Rule 12(f).  For the reasons set
14 forth below, Defendants' Motion to Dismiss will be granted.[2]

15

16                          **BACKGROUND**

17

18      This action arises out of activity surrounding a residential
19 loan transaction for the property located at 3561 Debina Way,
20 Rancho Cordova, Sacramento, CA ("Property").
21 ///
22 ///
23 ///
24 ///

25

26      [1] Unless otherwise stated, all further references to a Rule
   are to the Federal Rules of Civil Procedure.

27      [2] Because oral argument would not be of material assistance,
28 the Court ordered this matter submitted on the briefs.  E.D. Cal.
   Local Rule 78-230(h).

In April 2007, Defendant Daniel Klemesrud, as a loan officer for
Defendant Hilltop Financial Mortgage, approached Plaintiff and
solicited her to purchase her residence.[3]  Klemesrud advised
Plaintiff that he could get her the "best deal" with the "best
interest rates" available on the market.

Klemesrud promised Plaintiff an affordable loan with a fixed
rate, however he actually sold Plaintiff two loans.  The first
mortgage loan was an interest-only adjustable rate loan with an
initial rate of 7.375% that adjusted to 13.375% with a prepayment
penalty.  The second mortgage loan was a fixed interest rate and
included a prepayment penalty as well.  Plaintiff further alleges
that Klemesrud advised Plaintiff that if the loans ever become
unaffordable, he would simply refinance it into an affordable
loan.

To qualify Plaintiff for these loans, Klemesrud allegedly
overstated Plaintiff's income on the loan application without
Plaintiff's knowledge or consent.  Additionally, because
Plaintiff did not have the necessary funds for a down payment in
order to obtain the loan, Klemesrud allegedly contacted the
seller of the Property and obtained $17,000.00 for the down
payment.  Plaintiff alleges that Klemesrud either hid or
conspired with the underwriters in order to ensure approval of
Plaintiff's loan.

///

---

[3] Plaintiff's First Amended Complaint states that Klemesrud
solicited her to "purchase her residence."  However, Plaintiff's
Opposition states that Klemesrud solicited her "to refinance her
residence."  This discrepancy does not affect the Court's
decision.

3

1    On June 25, 2007, Plaintiff completed the loans on the
2  Property.  The terms of the loans were memorialized in two
3  Promissory Notes, which were secured by two Deeds of Trust on the
4  Property.  The Deeds of Trust identified Stewart Title of
5  Sacramento as Trustee, and Defendant Pacific First Financial
6  Services, L.P. as the Lender.  Both Deeds of Trust also
7  identified MERS as nominee for the Lender and the Lender's
8  successors and assigns, and as the beneficiary.

9    Plaintiff alleges that she was not informed of the actual
10  terms of the loans being sold to her until recently because she
11  was not given a copy of any of the loan documents prior to
12  closing.  Furthermore, Plaintiff alleges that she was only given
13  a few minutes to sign the documents.  Plaintiff asserts that the
14  notary did not explain any of the loan documents to Plaintiff,
15  nor was Plaintiff allowed to review such documents.  Rather,
16  Plaintiff was simply told to sign and initial the loan.
17  Plaintiff further alleges that she was not provided with the
18  requisite copies of a proper notice of cancellation.

19    On January 30, 2009, a Substitution of Trustee was issued by
20  MERS in its capacity as beneficiary under Plaintiff's first Deed
21  of Trust substituting ReconTrust as trustee.  On January 30,
22  2009, ReconTrust, in its capacity as agent to MERS as a
23  beneficiary, issued a Notice of Default and Election to Sell
24  Under Deed of Trust ("NOD").  This NOD was recorded in the Office
25  of the Recorder for Sacramento County, California, on February 3,
26  2009.
27  ///
28  ///

4

1    Plaintiff alleges that on April 3, 2009, a Qualified Written
2    Request ("QWR") under RESPA was mailed to Countrywide demanding
3    to rescind the loan under TILA provisions. Plaintiff states that
4    Countrywide never properly responded to the QWR.

5

6                              **STANDARD**

7    **A.   Motion to Dismiss**

8

9    On a motion to dismiss for failure to state a claim under
10   Rule 12(b)(6), all allegations of material fact must be accepted
11   as true and construed in the light most favorable to the
12   nonmoving party. <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336,
13   337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and
14   plain statement of the claim showing that the pleader is entitled
15   to relief," in order to "give the defendant fair notice of what
16   the...claim is and the grounds upon which it rests." <u>Conley v.</u>
17   <u>Gibson</u>, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957).
18   While a complaint attacked by a Rule 12(b)(6) motion to dismiss
19   does not need detailed factual allegations, a plaintiff's
20   obligation to provide the "grounds" of his "entitlement to
21   relief" requires more than labels and conclusions, and a
22   formulaic recitation of the elements of a cause of action will
23   not do. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 545, 127 S.
24   Ct. 1955, 167 L. Ed. 2d 929 (2007) (internal citations and
25   quotations omitted). Factual allegations must be enough to raise
26   a right to relief above the speculative level.
27   ///
28   ///

5

1   <u>Id</u>. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and

2   Procedure § 1216, pp. 235-236 (3d ed. 2004) ("The pleading must

3   contain something more...than...a statement of facts that merely

4   creates a suspicion [of] a legally cognizable right of action").

5       If the court grants a motion to dismiss a complaint, it must

6   then decide whether to grant leave to amend.  The court should

7   "freely give[]" leave to amend when there is no "undue delay, bad

8   faith[,] dilatory motive on the part of the movant,...undue

9   prejudice to the opposing party by virtue of...the amendment,

10  [or] futility of the amendment...."  Fed. R. Civ. P. 15(a); <u>Foman</u>

11  <u>v. Davis</u>, 371 U.S. 178, 182 (1962).  Generally, leave to amend is

12  only denied when it is clear that the deficiencies of the

13  complaint cannot be cured by amendment.  <u>DeSoto v. Yellow Freight</u>

14  <u>Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

15

16      **B.   Motion to Strike**

17

18      The Court may strike from a pleading "an insufficient

19  defense or any redundant, immaterial, impertinent, or scandalous

20  matter."  Fed. R. Civ. P. 12(f).  Motions to strike are a drastic

21  remedy and generally disfavored.  5C Wright & A. Miller, Federal

22  Practice and Procedure § 1380 (3d ed. 2004).  Immaterial matter

23  is that which has no essential or important relationship to the

24  claim for relief or the defenses being pled.  <u>Fantasy, Inc. v.</u>

25  <u>Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), <u>rev'd on other</u>

26  <u>grounds</u>, 510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d 455 (1994)

27  (internal citations and quotations omitted).

28  ///

6

A matter is impertinent if the statements do not pertain, and are not necessary, to the issues in question. <u>Id</u>. "Scandalous" matters "cast a cruelly derogatory light on a party or other person." <u>In re 2TheMart.com, Inc. Sec. Litig.</u>, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2000); <u>see, e.g.</u>, <u>Alvarado-Morales v. Digital Equip. Corp.</u>, 843 F.2d 613 (1st Cir. 1988) (striking the terms "brainwashing" and "torture" in a tort case in the employment context).

**ANALYSIS**

**A.   California's Rosenthal Act**

Plaintiff's second cause of action alleges that Defendants Countrywide and MERS violated California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788 <u>et seq.</u>, by threatening to take actions not permitted by law, including but not limited to: collecting on a debt not owed to the Defendants, making false reports to credit reporting agencies, foreclosing upon a void security interest, foreclosing upon a note of which they were not in possession nor otherwise entitled to payment, falsely stating the amount of debt, increasing the amount of debt by including amounts that are not permitted by law or contract, and using unfair and unconscionable means to collect a debt.

///

///

///

///

1    The purpose of the RFDCPA is "to prohibit debt collectors
2    from engaging in unfair or deceptive acts or practices in the
3    collection of consumer debts, and to require debtors to act
4    fairly in entering into and honoring such debts."  Cal. Civ. Code
5    § 1788.1. California courts have declined to regard a residential
6    mortgage loan as a 'debt' under the RFDCPA.  See Cal. Civ. Code
7    § 1788.2(e)-(f); Pittman v. Barclays Capital Real Estate, Inc.,
8    No. 09CV0241, 2009 WL 1108889, at *3 (S.D. Cal. April 24,
9    2009)(dismissing plaintiff's mortgage-related RDFCPA claim for
10   failing to "invoke statutory protections"); Ines v. Countrywide
11   Home Loans, Inc., No. 08cv1267, 2008 WL 4791863, at *3 (S.D. Cal.
12   2008) (stating plaintiff's mortgage debt claim did not fall
13   within the meaning of the RFDCPA); Castaneda v. Saxon Mortg.
14   Services, Inc., No. 2:09cv01124, 2009 WL 4640673, at *3 (E.D.
15   Cal. Dec. 3, 2009) (holding that a foreclosure pursuant to a deed
16   of trust does not constitute a debt collection under the RFDCPA).
17   As such, a foreclosure does not qualify as an unfair debt
18   collection.

19   The behavior Plaintiff complains of arises out of or exist
20   in connection to Plaintiff's residential loan mortgage.  As the
21   courts have repeatedly held, the collection of this debt does not
22   fall under the purview of the RFDCPA.

23    Defendants' Motion to Dismiss Plaintiff's RFDCPA claim is
24   therefore granted.

25   ///
26   ///
27   ///
28   ///

8

1    ### C.   Negligence

2

3        Plaintiff's third claim alleges negligence against all
4    Defendants.  Plaintiff alleges that the Defendants "owed a
5    general duty to the Plaintiff to perform acts in such a manner as
6    to not cause Plaintiff harm" and that such a duty was breached
7    when Defendants "failed to maintain the original Mortgage Note,
8    failed to properly create original documents, failed to make the
9    required disclosures to the Plaintiff and instituted foreclosure
10   proceedings wrongfully."  Plaintiff further alleges that
11   Defendants breached their duty of care to Plaintiff "when they
12   took payments to which they were not entitled, charged fees they
13   were not entitled to charge, and made or otherwise authorized
14   negative reporting of Plaintiff['s] creditworthiness to various
15   credit bureaus wrongfully."

16        In order to state a cause of action for negligence, a
17   plaintiff must allege: (1) the defendant has a legal duty to use
18   due care; (2) the defendant breached such legal duty; (3) the
19   defendant's breach was the proximate or legal cause of the
20   resulting injury; and (4) damage to the plaintiff.  Ladd v.
21   County of San Mateo, 12 Cal. 4th 913, 917 (1996).  The existence
22   of a legal duty on the part of the defendant is a question of law
23   to be determined by the court.  Kentucky Fried Chicken of
24   California, Inc. v. Superior Court, 14 Cal. 4th 814, 819 (1997);
25   Isaacs v. Huntington Memorial Hospital, 38 Cal. 3d 112, 124
26   (1985).

27   ///

28   ///

When not provided by statute, the existence of such a duty depends upon the foreseeability of the risk and a weighing of policy considerations for and against the imposition of liability. <u>Jacoves v. United Merchandising Corp.</u>, 9 Cal. App. 4th 88, 105 (1992).

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." <u>Nymark v. Heart Fed. Sav. & Loan Ass'n</u>, 231 Cal. App. 3d 1089, 1095-96 (1991) (affirming summary judgment in favor of defendant lending institution because defendant owed no duty to plaintiff in conducting its loan processing procedures); <u>see</u> <u>Wagner v. Benson</u>, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'"). However, the analysis does not stop there.  Rather, California courts look to six factors in determining whether a financial institution owes a duty of care to a borrower-client.  These facts are: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm."

///

///

1  Id. at 1098; Knox v. Ameriquest Mortg. Co., No. C0500240, 2005 WL
2  1910927 (N.D. Cal. Aug. 10, 2005) (holding that the fifth factor
3  alone was enough to establish a duty of care where plaintiffs had
4  asserted allegations of intentional document forgery).

5      Plaintiff alleges that Defendants are "diversified financial
6  marketing and/or services corporations engaged primarily in
7  residential mortgage banking and/or related business."  As
8  financial institutions, Defendants owed no duty of care to
9  Plaintiff.  Plaintiff has not provided the Court with any statute
10 creating a duty, or a special relationship giving rise to a duty
11 between mortgagors and a lending institution (Countrywide), a
12 trustee (ReconTrust), or a beneficiary (MERS).

13     Defendants' involvement in the loan transaction falls far
14 short of the active participation necessary to give rise to
15 liability.  Connor v. Great Western Sav. & Loan Ass'n, 69 Cal. 2d
16 850, 864 (1968) (finding a duty of care where lender exercised
17 extensive control and shared profits).

18     Defendants' Motion to Dismiss Plaintiff's negligence claim
19 is therefore granted.

20

21     D.   Real Estate Settlement Procedures Act ("RESPA")

22

23     Plaintiff's fourth claim alleges that Countrywide violated
24 the RESPA, 12 U.S.C. § 2605(e)(2), by failing and refusing to
25 provide a proper written explanation or response to Plaintiff's
26 alleged qualified written request ("QWR").  Plaintiff alleges
27 that on April 3, 2009, a QWR was mailed to Countrywide and that
28 Countrywide has yet to properly respond to such request.

1    RESPA requires mortgage loan servicers who receive a
2  "qualified written request" for information relating to the
3  servicing of a loan to provide a written response acknowledging
4  receipt of the correspondence within 20 days.  12 U.S.C.
5  § 2605(e)(1)(A).  For the purposes of the Act, a QWR "shall be a
6  written correspondence [] that... includes a statement of the
7  reasons for the belief of the borrower, to the extent applicable,
8  that the account is in error or provides sufficient detail to the
9  servicer regarding other information sought by the borrower."
10 12 U.S.C. § 2605(e)(1)(B).

11    Although Plaintiff describes her letter as QWR, she fails to
12 allege any facts which qualify it as such.  Plaintiff has not
13 alleged that she was seeking information about her account or
14 that she was attempting to correct an error.  Plaintiff states
15 only that her QWR included a demand to rescind the loan pursuant
16 to TILA provisions.  However, a letter demanding rescission is
17 simply that, a rescission letter.  It does not amount to a QWR
18 invoking the protection of RESPA.

19    As such, Plaintiff fails to state a claim for violation of
20 RESPA.  Defendants' Motion to Dismiss Plaintiff's RESPA claim is
21 granted.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1    **E.    Fraud**

2

3         Plaintiff's sixth claim is for fraud.  Plaintiff alleges

4    that Countrywide committed fraud when it "misrepresented to

5    Plaintiff that [Countrywide] has the right to collect monies from

6    Plaintiff on its behalf or on behalf of others when Defendant

7    [Countrywide] has no legal right to collect such monies."

8    Plaintiff alleges that MERS "misrepresented to Plaintiff on the

9    Deed of Trust that it is a qualified beneficiary with the ability

10   to assign or transfer the Deed of Trust and/or the Note and/or

11   substitute trustees under the Deed of Trust."

12        Additionally, Plaintiff alleges that ReconTrust

13   "misrepresented to Plaintiff that [it] was entitled to enforce

14   the security interest and has the right to institute a non-

15   judicial foreclosure proceeding under the Deed of Trust when they

16   filed a Notice of Default on February 3, 2009."  Plaintiff thus

17   contends that ReconTrust "did not have the right to initiate

18   foreclosure proceeding herein under California Civil Code § 2924

19   et seq."

20        In California the required elements of fraud are

21   "a) misrepresentation; b) knowledge of falsity; c) intent to

22   defraud; d) justifiable reliance; and e) resulting damage." In re

23   Estate of Young, 160 Cal. App. 4th 62, 79 (2008) (citation

24   omitted).  A claim for fraud requires a heightened pleading

25   standard in which the allegations must be "specific enough to give

26   defendants notice of the particular misconduct which is alleged to

27   constitute the fraud charged so that they can defend against the

28   charge and not just deny that they have done anything wrong."

13

1  <u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  Statements
2  of the time, place and nature of the alleged fraudulent activities
3  are sufficient, <u>Id</u>. at 735, provided the plaintiff sets forth
4  "what is false or misleading about a statement and why it is
5  false."  <u>In re GlenFed, Inc., Securities Litigation</u>, 42 F.3d 1541,
6  1548 (9th Cir. 1994).

7  Here that standard has not been met. Plaintiff has not
8  provided the time, place, or nature of the alleged
9  misrepresentations.  Most importantly, Plaintiff has failed to
10  allege what is false or misleading about Defendants' statements
11  and why they are false.  Simply alleging that Defendants'
12  "misrepresented" themselves is insufficient.  Plaintiff's
13  pleading does not meet the heightened standard necessary for a
14  fraud claim.

15  Defendants' Motion to Dismiss Plaintiff's fraud claim is
16  therefore granted.

17

18  **F.   Violation of California's Unfair Competition Law**

19

20  Plaintiff's seventh claim alleges Defendants' acts
21  "constitute unlawful, unfair, and/or fraudulent business
22  practices, as defined in the California Business and Professions
23  Code § 17200 et seq."

24  California Business and Professions Code § 17200 et seq.,
25  more commonly known as California's Unfair Competition Law
26  ("UCL") defines unfair competition as "any unlawful, unfair or
27  fraudulent business act or practice ...."  Cal. Bus. & Prof. Code
28  § 17200.

14

"Unlawful" practices are practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulation, or court-made." Saunders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994) (citing People v. McKale, 25 Cal. 3d 626, 632 (1979)). To state a cause of action based on an "unlawful" business act or practice under the UCL, a plaintiff must allege facts sufficient to show a violation of some underlying law. McKale, 25 Cal.3d at 635. A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to a violation of the law, or that otherwise significantly threatens or harms competition." Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 187 (1999). To sufficiently plead an action based on an "unfair" business act or practice, a plaintiff must allege facts showing the "unfair" nature of the conduct and that the harm caused by the conduct outweighs any benefits that the conduct may have. Motors, Inc. v. Times Mirror Co., 102 Cal. App. 3d 735, 740 (1980) ("[S]ince the complaint is unlikely to reveal defendant's justification, if th[e] pleading states a prima facie case of harm,...the defendant should be made to present its side of the story."). A "fraudulent" business act or practice is one in which members of the public are likely to be deceived. Hall v. Time, Inc., 158 Cal. App. 4th 847, 849 (2008); Olsen v. Breeze, 48 Cal. App. 4th 608, 618 ("'Fraudulent,' as used in the statute, does not refer to the common law tort of fraud but only requires a showing members of the public 'are likely to be deceived.'" (citations omitted)).

Thus, in order to state a cause of action based on a "fraudulent" business act or practice, the plaintiff must allege that consumers are likely to be deceived by the defendant's conduct. <u>Committee on Children's Television, Inc. v. General Foods Corp.</u>, 35 Cal. 3d 197, 212 (1983).

In alleging violation of the UCL, Plaintiff incorporates by reference all prior causes of actions, however none of those claims have been sufficiently plead to survive a motion to dismiss. Plaintiff therefore lacks a predicate "unlawful" action to underlie her UCL claim.

Similarly she fails to allege with reasonable particularity "unfair" or "fraudulent" behavior by Defendants. Plaintiff asserts that "unlawful, unfair, and/or fraudulent business practices" have occurred but she does not identify which specific behaviors she believes are punishable under the UCL. To the extent to which she may be referring to *all* alleged wrongful conduct listed in the Complaint, Plaintiff still fails to state why such behavior is "unfair" or "fraudulent" as defined by the statute.

Due to Plaintiff's failure to sufficiently plead unlawful, unfair or fraudulent behaviors, Defendants' Motion to Dismiss Plaintiff's UCL claim is granted.

///
///
///
///
///
///

1

### G.    Wrongful Foreclosure

2

3    Plaintiff's tenth claim alleges wrongful foreclosure.
4  Specifically, Plaintiff alleges that Defendants "were not, and
5  are not, in possession of the Note, are not beneficiaries,
6  assignees or employees of the person or entity in possession of
7  the Note, and are not otherwise entitled to payment."  Plaintiff
8  further alleges that Defendants "are not 'person[s] entitled to
9  enforce' the security interest in the Property, as that term is
10  defined in [California] Commercial Code § 3301."
11    California Civil Code §§ 2924-2924i govern non-judicial
12  foreclosures.  California courts have consistently held that the
13  Civil Code provisions "cover every aspect" of the foreclosure
14  process, I.E. Associates v. Safeco Title Ins. Co., 39 Cal. 3d 281,
15  285 (1985), and are "intended to be exhaustive," Moeller v. Lien,
16  25 Cal. App. 4th 822, 834 (1994).  As such, Plaintiff's reliance
17  on Cal. Comm. Code § 3301 is misplaced.  Pursuant to § 2924(a)(1)
18  of the California Civil Code, a "trustee, mortgagee or beneficiary
19  or any of their authorized agents" may conduct the foreclosure
20  process.  There is no requirement that the party initiating non-
21  judicial foreclosure proceedings be in possession of the original
22  note.  See, e.g., Candelo v. NDEX West, LLC, No. CV F 08-1916,
23  2008 WL 5382259, at *4 (E.D. Cal. Dec. 23, 2008) ("No requirement
24  exists under statutory framework to produce the original note to
25  initiate non-judicial foreclosure."); Putkkuri v. Recontrust Co.,
26  No. 08cv1919, 2009 WL 32567, at *2 (S.D. Cal. Jan. 5, 2009)
27  ("Production of the original note is not required to proceed with
28  a non-judicial foreclosure.").

17

Furthermore, a defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." Abdallah v. United Savings Bank, 43 Cal. App. 4th 1101, 1109 (1996).  Therefore, an action to set aside a foreclosure sale, unaccompanied by an offer to tender, does not state a cause of action which a court of equity recognizes. Karlsen v. American Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 117 (1981).

Plaintiff argues that tender is not required when it would be inequitable to do so.  However, Plaintiff has not explained how an offer to tender would be inequitable in the current circumstances.  Therefore, regardless of whether or not Defendants were entitled to conduct the foreclosure process, the Plaintiff has not offered to tender, and thus, her claim for wrongful foreclosure must fail.

As for Plaintiff's argument that MERS lacked standing to proceed with its non-judicial foreclosure, it too lacks legal merit.  Courts have consistently found that MERS does in fact have standing to foreclose as the nominee of the lender.  See, e.g., Trent v. Mortgage Elec. Registration Sys., Inc., 288 Fed. Appx. 571 (11th Cir. 2008) (unpublished); Mortgage Elec. Registration Sys., Inc. v. Azize, 965 So. 2d 151 (Fla. App. 2 Dist. 2007); Mortgage Elec. Registration Sys., Inc. v. Revoredo, 955 So. 2d 33 (Fla. App. 3 Dist. 2007); In re Huggins, 357 B.R. 180 (Bankr. D. Mass. 2006); In re Sina, No. A06-200, 2006 WL 2729544 (Minn. Ct. App. Sept. 26, 2006) (unpublished); ///

1  <u>Mortgage Elec. Registration Sys., Inc. v. Ventura</u>, No. CV
2  054003168S, 2006 WL 1230265 (Conn. Super. Ct. April 20, 2006)
3  (unpublished); <u>Mortgage Elec. Registration Sys., Inc. v. Leslie</u>,
4  No. CV044001051, 2005 WL 1433922 (Conn. Super. Ct. May 25, 2005)
5  (unpublished).

6       Under the mortgage contract, MERS has the legal right to
7  foreclose on the debtor's property.  The fact that MERS, the
8  mortgagee, lacked a beneficial interest in the note that was
9  secured by the mortgage does not deprive MERS of standing to
10 enforce the note and foreclose the mortgage.  <u>Trent</u>, 288 Fed.
11 Appx. at 572.  MERS is the owner and holder of the note as
12 nominee for the lender, and thus MERS can enforce the note on the
13 lender's behalf.  <u>Azize</u>, 965 So. 2d at 153-54.

14
15                           **CONCLUSION**
16

17      For the foregoing reasons, Defendants' Motion to Dismiss
18 Plaintiff's First Amended Complaint (Docket No. 19) is GRANTED
19 with leave to amend.  Defendants' Motion to Strike is DENIED as
20 moot.

21      Plaintiff may file an amended complaint not later than
22 twenty (20) days after the date this Memorandum and Order is
23 filed electronically.

24 ///
25 ///
26 ///
27 ///
28 ///

                              19

If no amended complaint is filed within said twenty (20)-day period, without further notice, Plaintiff's remaining claims will be dismissed without leave to amend.

IT IS SO ORDERED.

Dated: January 11, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE